

Exhibit A to Defendant's
Evidentiary Brief re: just compensation

January 26, 2020

Steve Csajaghy, Esq.
Condit Csajaghy, LLC
695 South Colorado Boulevard, Suite 270
Denver, Colorado 80246

          RE:    8.903 Acres of Land
                 Starr County, Texas
                 Owned by John F. J. Guerra
                 Proposed Taking by the United States of America

Dear Mr. Csajaghy:

    You have asked me to address the proper methodology for appraising an access easement under the federal rules. Specifically, your client, John F. J. Guerra, owns 8.903 acres of vacant land in Starr County, Texas. The U. S. Government ("Government") reportedly seeks an access easement across the entire property and the easement duration is to be for one year (12 months). It is my understanding that the Government has offered $100 as the Just Compensation for this temporary access easement.

    From the pleadings in the case, Government taking is described as follows:

*The estate taken is a temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule C (8.903 acres) to survey, make borings, and conduct other investigatory work for the purposes described in Schedule B (to build a wall)* <u>*and to access adjacent lands*</u> *[emphasis added]; including the right to trim or remove any vegetative or structural obstacles that interfere with said work;...*

    It is further my understanding that the Government has provided no real estate appraisal, market analysis, sales comparables, rent comparables or any other market evidence to support is $100 offer as sufficient just compensation. It appears to me that this lack of evidence violates the Government's own rules regarding proper valuation procedures for federal acquisitions of land. I refer the reader to the latest edition of <u>the Uniform Appraisal Standards for Federal Land Acquisition</u> ("UASFLA"). Please note the following introductory material which is found in the Forward to the most recent edition of the UASFLA:

1 | P a g e

*The valuation of real estate in federal acquisitions—serving public purposes that range from national parks and public buildings to infrastructure and national security needs—must satisfy not only appraisal industry standards authorized by Congress, but also the command of the Fifth Amendment to the U.S. Constitution: that no property shall "be taken for public use, without just compensation." Sound appraisals are vital to ensure that government acquisitions do justice to both the individual whose property is taken and the public which must pay for it. These federal Standards, frequently cited in legislation and court rulings, have guided the appraisal process in the valuation of real estate in federal acquisitions since their original publication by the Interagency Land Acquisition Conference in 1971.*

*The Attorney General formed the Interagency Land Acquisition Conference in 1968. Since its inception, the Conference has been "fueled by the common purpose and dedication" of its participants—any and all federal agencies that acquire property for public uses. Their shared objectives are to promulgate uniform, fair, and efficient appraisal standards for federal acquisitions; to identify and find the best solutions to the problems incident to acquiring land for public purposes; and to consider all acquisition-related matters with the twin aims of protecting the public interest and ensuring fair and equitable treatment of landowners whose property is affected by public projects.*

*The Conference is chaired by the Assistant Attorney General for the Environment and Natural Resources Division, Department of Justice, and Andrew M. Goldfrank, Chief of the Division's Land Acquisition Section, serves as Conference Executive.*

*In updating the Standards for the first time in 16 years, we incorporated relevant new appraisal methodology and theory, integrated new case law, and ensured appropriate consistency with professional appraisal standards. The content is also restructured and revised for clarity and readability, resulting in practical and understandable guidance for appraisers, attorneys, and the general public. The final text reflects the contributions of the Conference agencies' representatives, who shared valuable insights and suggestions on the previous Standards and commented on drafts of the sixth edition.*

    One commonly accepted methodology for appraising a taking of a temporary access easement is by way of a lost rent calculation. Put simply, a one year access easement taking that covers 8.903 acres is not tantamount to a fee taking. All rights of the underlying ownership returns to the landowner at the end of the one year period. However, during that one year period, there are few rights of surface use that the landowner can exercise. I refer the reader to the broad take language quoted above.

    As such, the just compensation for the temporary period can be calculated as land rent loss for one year. That can be determined in a variety of ways. The most common technique is for an appraiser to first estimate fee value and then apply a "rate of return" for one year. This results in one year of land rent lost to the owner.

    I provide the following two examples. Let us assume the market value for the fee interest is $5,000 per acre. This would indicate a value for the Guerra land to be $44,500 (8.903 acres x

$5,000/acre). Let us further assume the appropriate rate of return is 10% per year. The lost rent can then be calculated as follows:

| | |
|---|---|
| Land Size: | 8.903 acres |
| Value/Acre: | x $5,000/acre |
| Hypothetical Fee Value: | $ 44,500 |
| x Rate of Return: | x    10% |
| x Duration (years) | x    1 year |
| Lost Rent: | $ 4,450 |

As an alternative, let us assume the market value for the fee interest is $10,000 per acre. This would indicate a value for the Guerra land to be $89,030 (8.903 acres x $10,000/acre). Let us again assume the appropriate rate of return is 10% per year. The lost rent can then be calculated as follows:

| | |
|---|---|
| Land Size: | 8.903 acres |
| Value/Acre: | x $10,000/acre |
| Hypothetical Fee Value: | $ 89,030 |
| x Rate of Return: | x    10% |
| x Duration (years) | x    1 year |
| Lost Rent: | $ 8,903 |

This should illustrate to the reader why the Government's $100 offer is inadequate. For the $100 to be just compensation based on the accepted methodology, the value of fee interest in the land would have to be as low as $112.32 per acre. This absurdity is shown in the following calculation:

| | |
|---|---|
| Land Size: | 8.903 acres |
| Value/Acre: | x $112.32 /acre |
| Hypothetical Fee Value: | $1,000 |
| x Rate of Return: | x    10% |
| x Duration (years) | x    1 year |
| Lost Rent: | $   100 |

Exhibit A to Defendant's
Evidentiary Brief re: just compensation

This concludes my brief explanation regarding appraisal methodology. Should you have any questions, please let me know.

Respectfully submitted,

CLAYTON AND COMPANY, INC.

_____
David B. Clayton
MAI, AI-GRS, MRICS, ASA, JD
Colorado Certified General Appraiser
CG1315748

CV attached

Exhibit A to Defendant's
Evidentiary Brief re: just compensation

# PROFESSIONAL QUALIFICATIONS
## DAVID B. CLAYTON

*Clayton and Company, Inc.*  *Tele: 303-832-1935*
*400 South Colorado Boulevard, Suite 800*  *Fax: 303-832-1202*
*Denver, Colorado 80246*  *website: claytoncolorado.com*
*Email: david@claytoncolorado.com*

## EDUCATION

*University of Houston College of Law, J.D., 1983*

*Texas Tech University, B.A. Economics, 1976*

## DESIGNATIONS, LICENSES, AFFILIATIONS

| | |
|---|---|
| MAI: | The Appraisal Institute |
| AI-GRS: | The Appraisal Institute – General Review Specialist |
| ASA: | Member - The American Society of Appraisers, Accredited Senior Appraiser #36726  Elected Member, National Real Property Committee (2004-2005) |
| MRICS: | Member Royal Institution of Chartered Surveyors |
| IFAS: | Senior Appraiser Specialist – National Association of Independent Fee Appraisers |

General Certified Appraiser - Colorado Certification Number: CG1315748

Colorado Attorney at Law #14578

Colorado and Denver Bar Association

    Environmental Law Section

    Real Estate and Titles Section - Eminent Domain Committee

    Natural Resource Law Section

    Trust and Estates Law Section

Denver Metro Association of Realtors®

Aspen Association of Realtors®

1

Exhibit A to Defendant's
Evidentiary Brief re: just compensation

**SPEAKING ENGAGEMENTS**

*Eminent Domain 2019*
(April 2019 - CLE International – Denver, Colorado)

*International Right of Way Association*
(March 2018 – Eminent Domain Mock Trial – Denver, Colorado)

*Colorado Eminent Domain Practice*
(November 2017 – Denver, Colorado)

*Eminent Domain 2017*
(April 2017 - CLE International – Denver, Colorado)

*Eminent Domain 2016*
(April 2016 - CLE International – Denver, Colorado)

*Right of Way and Crossing Agreements for Electric Transmission Lines: A Legal Guide 2016*
(March 2016 – Kinetic – Denver, Colorado)

*Eminent Domain 101*
(November 2015 – Colorado CLE – Denver, Colorado)

*Eminent Domain 2015*
(April 2015 - CLE International – Denver, Colorado)

*Right of Way and Crossing Agreements: A Legal Guide 2015*
(March 2015 – Kinetic – Denver, Colorado)

*Eminent Domain 2010*
(August 2010 - CLE International – Denver, Colorado)

*Eminent Domain 2008*
(August 2008 - CLE International – Denver, Colorado)

*Eminent Domain 2007*
(August 2007 - CLE International – Denver, Colorado)

*Repositioning Properties*
(October 2006 - Colorado Brownfields Conference – Arvada Center, Colorado)

*Risk Reduction Strategies for Environmentally Impaired Real Estate*
(October 2000 - General Services Administration Conference – Hyannis, Mass.)

*Rights of Surface Owners Where There Are Reserved Oil & Gas Rights*
(July 1997 - 15th Annual Real Estate Symposium, Colorado Bar Association - Vail, Colorado)

*Environmental Issues in Real Estate*
(October 1996 - Colorado Society of Certified Public Accountants/Marriott DTC, Denver)

*Turning Brownfields into Gold*
(September 1996 - NAIOP/Marriott City Center, Denver)

*The Colorado Brownfields Policy Forum*
    (April 1996 - Colorado Convention Center, Denver)

*Making Sense of Brownfields Redevelopment:  Practical Applications*
    (March 1996 - Hyatt Regency, Denver)


**ARTICLES PUBLISHED**

    *"Contaminated Property"* - **The Colorado Springs Business Journal (September 12, 1997).**

    *"The Dirty Dozen:  Twelve Rules for Buying Contaminated Property"* - **The Colorado Springs Business Journal (August 1, 1997).**

    *"Don't Overpay Real Property Tax"* - **Colorado Real Estate Journal (May 7, 1997).**

    *"Challenging Valuations of Contaminated Property"* - **The Colorado Lawyer (April 1997).**

    *"Owners can Challenge Tax Bill When Property Is Contaminated"* - **Colorado Real Estate Journal (September 4, 1996).**


**EXPERIENCE**

    Mr. Clayton is currently employed by Clayton and Company, Inc., where he serves as president.  Mr. Clayton has 40 years of experience as a real estate appraiser and consultant.  His practice includes an emphasis in the areas of:

| | |
|---|---|
| Eminent Domain | Oil and Gas Pipeline Acquisitions |
| Tax Assessment Appeals | Litigation Support |
| Bankruptcy Asset Valuation | Properties with Environmental Issues |
| Construction Defects Cases | |


**QUALIFIED EXPERT TESTIMONY – MOST RECENT FOUR YEARS**

    Mr. Clayton has been qualified as an expert witness and has testified in trial on numerous occasions.  Cases in which he has provided sworn testimony as an expert witness in deposition or trial include the following:


1.     *City of Colorado Springs, Colorado v. Walker Ranches, LLLP, et al,* El Paso County District Court Case No. 2011 CV 313.  Testimony was by deposition (October 2014).

2.     *Chicago Title Insurance Company v. The Gretta Wyman Living Trust,* Adams County District Court Case No. 14 CV 31060.  Testimony was by deposition (February 2015).

3.     *Vaughn Counts, et al v. Ironbridge Homes, LLC, et al,* Garfield County District Court Case No. 2010CV142.  Testimony was by deposition (March 2015) and trial (July 2015).

3

4. *Casco, LLC v. McDonald's Real Estate Company,* United States District Court for the District of Wyoming, Case No. 13-CV-00148 J. Testimony was by deposition (March 2015).

5. *Wells Fargo Bank v. Colorado Plaza III, et al,* Garfield District Court Case No. 2014CV-30233. Testimony was by deposition (April 2015).

6. *Pivotal Colorado II, LLC, et al v. Pivotal Group, Inc., et al,* Arizona Superior Court, Maricopa County, Case No. CV2011-017812. Testimony was by deposition (May 2015).

7. *Carousel Farms Metropolitan District v. Woodcrest Homes, Inc., et al,* Douglas County District Court, Case No. 2015CV30013. Testimony was by deposition (August 2015) and trial (September / October 2015).

8. *Regional Transportation District v. Ready Mixed Concrete Company, et al,* Denver County District Court Case No. 2014 CV 33255. Testimony was by deposition (September 2015).

9. *Bruce Smith, et al v. The Related Companies, LP,* Pitkin County District Court Case No. 2011 CV 168. Testimony was by deposition (October 2015).

10. *Regional Transportation District v. CityPoint Aurora, LLC,* Arapahoe County District Court Case No. 2014CV032809. Testimony was by deposition (September 2015).

11. *City of Colorado Springs v. Ultra Resources, Inc., et al,* El Paso County District Court Case No. 2013CV743. Testimony was by deposition (December 2015) and trial (May 2016).

12. *Regional Transportation District v. Edmund P. Gubanich, et al,* Denver County District Court Case No. 2012CV3221. Testimony was by deposition (December 2015) and trial (January 2016).

13. *City of Colorado Springs, Colorado v. Lorson, LLC, et al,* El Paso County District Court Case No. 2013CV32113. Testimony was by deposition (February 2016).

14. *B3 Ventures, LLC v. Stewart Title Guaranty Company*, Larimer County District Court Case No. 2014CV30812. Testimony was by trial (February 2016).

15. *City and County of Denver, Acting by and Through Its Board of Water Commissioners v. Mile High Painting, Inc.,* Denver District Court Case No. 2015CV31159. Testimony was by deposition (August 2016).

16. *City and County of Denver v. Iselo Investment Partners, LLC*, Denver District Court Case No. 2015CV031614 combined with Case No. 2015CV034394. Testimony was by deposition (August 2016) and trial (October 2016).

17. *Aurora Urban Renewal Authority v. RBSC L.L.C., et al,* Arapahoe County District Court Case No. 2016CV030018. Testimony was by deposition (December 2016) and trial (January 2017).

18. *City of Thornton v. N. K. Sharma, et al,* Adams County District Court Case No. 2015CV31899. Testimony was by deposition (January 2017) and trial (February 2017).

19. *Aurora Urban Renewal Authority v. Romesh K. Sharma., et al,* Arapahoe County District Court Case No. 2016CV030188. Testimony was by deposition (April 2016) and trial (June 2017).

4

20. *Front Range Pipeline, LLC v. Hall-Irwin Aggregates, Inc., et al,* Weld County District Court Case No. 17CV30095. Testimony was in pre-trial hearing (April 2017).

21. *Good Funds Lending, LLC v. Westcor Land Title Insurance Company.* Forum Arbitration Dispute Resolution File No. FA1706001737926. Testimony was at arbitration hearing (July 2018).

22. *The City of Federal Heights v. Suncor Energy Sales Inc., et al,* Adams County District Court Case No. 2017-CV-31266. Testimony was by deposition (July 2018) and trial (August 2018).

23. *United States of America v. 8.11 Acres of Land, More or Less In the County of Grand, Colorado; and Lambright, LLC, et al.,* United States District Court for the District of Colorado, Civil Action No. 1:17-CV-01553-RM-SKC. Testimony was by depositions (October 2018) and (November 2018). Trial testimony was given in October 2019.

24. *James L Parks Elk Creek, LLC, et al v. William H. Wheeler, et al* District Court Rio Blanco County Case No. 2017CV30015. Testimony was by deposition in September 2019.

25. *City of Idaho Springs, Colorado v. Mile 242, LLC, et al,* District Court of Clear Creek County Case No. 2018 CV 30018. Testimony was by deposition (July 2019) and trial (August 2019).

26. *Board of County Commissioners of the County of Adams v. TDSO Holdings, LLC, et al,* District Court of Adams County Case No. 2018CV31658. Testimony was by trial (November 2019).

27. *City of Thornton v. Andrew P. Calerich, et al,* District Court of Adams County Case No. 2018CV32099. Testimony was by deposition (October 2019).

28. *Public Service of Colorado v. William L. Coyle, et al,* District Court of Douglas County Case No. 2018CV30780. Testimony was by deposition (October 2019).

29. *City of Greeley v. Westview Center, LLC, et al,* District Court of Weld County Case No. 2018CV30268. Testimony was by deposition (August 2019).

30. *Transportation Commission & Department of Transportation, State of Colorado v. JRJDK, LLLP, et al,* District Court of Larimer County Case No. 2018CV30757. Testimony was by deposition (November 2019).

31. *Cheyenne Connector Pipeline, Inc. v. Janet Frazier,* District Court of Weld County Case No. 201CV30055. Testimony was at an Immediate Possession Hearing (March 2019).

32. *In Re: 999 Brush Creek Road, LLC EIN: 81-1752575 Debtor-in-Possession,* Case No. 19-16888-JGR Chapter 11, United States Bankruptcy Court for the District of Colorado. Testimony was at trial (November 2019).